**Patricia PRASIL, etc., Plaintiff,**

v.

**Doris MEISSNER, Commissioner of the Immigration and Naturalization Service, Defendant.**

**Patricia PRASIL, Plaintiff,**

v.

**Brian R. PERRYMAN, Acting District Director of the Immigration and Naturalization Service, Respondent.**

No. 96 C 4571.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 17, 1996.

**92**

David Rubman, Chicago, IL, for Plaintiff.

James G. Hoofnagle, Jr., Special Assistant U.S. Attorney, Chicago, IL, Hugh G. Mullane, Office of Immigration Litigation, Washington, DC, for Defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Patricia Prasil ("Prasil") has brought a putative class action against Immigration and Naturalization Service ("INS") Commissioner Doris Meissner and INS Acting District Director Brian Perryman, challenging Prasil's proposed deportation (now characterized as "removal" under the newly-enacted [effective September 30, 1996] Illegal Immigration Reform and Immigrant Responsibility Act of 1996 [the "1996 Act"] ). For the reasons stated in this memorandum opinion and order, Prasil's action is dismissed.

Prasil, a native of South Africa and a British citizen, entered this country under the Visa Waiver Pilot Program (the "Program"), which despite its "pilot" label has settled in

as a permanent component of our immigration laws. Originally enacted in 1986 as Section 217 of the Immigration and Nationality Act (the "Act"), 8 U.S.C. § 1187,[1] the Program was and is designed to facilitate international travel for short-term visitors to the United States—tourists—without their having to undergo the administrative snarls and red tape of obtaining visas. It involves a tradeoff: In exchange for his or her waiver of the visa requirement, the alien expressly "waive[s] any right ... to contest, other than on the basis of an application for asylum, any action for deportation against the alien" (Act § 1187(b)(2)).[2]

In pursuance of the authority granted by Act § 1187(a) ("[t]he Attorney General and the Secretary of State are authorized to establish a pilot program...."), two now-relevant regulations (8 C.F.R. §§ 217.4(c) and 242.1(d), collectively "the Regulations") have been adopted:

An alien who has been admitted to the United States under the provisions of section 217 of the Act and of this part who is determined by an immigration officer to be deportable from the United States under one or more of the deportable grounds listed in section 241 of the Act shall be removed from the United States to his or her country of nationality or last residence. Such removal for deportation shall be determined by the district director who has jurisdiction over the place where the alien is found, and shall be effected without referral of the alien to an immigration judge for a determination of deportability, except that an alien admitted as a Visa Waiver Pilot Program visitor who applies for asylum in the United States must be referred to an immigration judge for a determination of deportability.

\*     \*     \*     \*     \*     \*

[A]n alien who has been admitted to the United States under the provisions of [the Program] has waived any right to contest

---

1.  Further citations to the Act will take the form "Act § —," utilizing the numbering within Title 8 rather than the Act's internal numbering.

2.  1996 Act § 635 replaced the words "deportation against" in that section with "removal of,"

consistently with the uniform usage that the new enactment has introduced into the Act. This opinion will hereafter adhere to the new language.

any action against him or her for deportation, other than on the basis of an application for asylum. An alien admitted to the United States under section 217 of the Act shall be taken into custody and removed from the United States upon a determination by an immigration officer (district director who has jurisdiction over the place where the alien is found) that the alien is deportable in accordance with procedures in § 217.4(c) of this chapter, and without commencement of a proceeding under this part, except that such an alien who applies for asylum in the United States shall be brought into proceedings as otherwise provided in this part.

As can be seen, the Regulations vest the decision as to an alien's removal in a district director such as respondent Perryman, except in the special situation of an alien who is claiming asylum (conforming in the latter respect to the single exception that is stated in Act § 1187(b)(2)). What the Regulations clearly do *not* do is to afford to persons who have entered under the Program, and who do not thereafter seek asylum, any right to a hearing before an immigration judge as provided by Act § 1250 [3] for virtually every other alien resisting removal—and that is the sole basis for Prasil's Complaint here.

It is really unnecessary to recite Prasil's particular personal circumstances, except for the admitted facts that having entered the United States under the Program on February 27, 1993 for an ostensible 90–day period (the limit provided by Act § 1187(a)(1) for entrants under the Program), she has remained here for over three years until the INS authorities have said "Enough!" and have acted to remove her.

■ Any asserted hardships that such removal may entail (Prasil says that having been widowed after an initial post-entry marriage to a United States citizen, she has just married another United States citizen on July 6, 1996 and has applied for permanent residency on the basis of that marriage), including any difficulties that other provisions of the Act may put in the way of

Prasil's subsequent return to the United States, are really the direct result of the fact that Prasil's entire stay in this country has really been at sufferance in light of her express advance waiver of any right to contest her removal (which was the precondition to her entry into the United States under the Program to begin with). No basis exists for any equitable claim to more favorable treatment on Prasil's part, for the intervening events have thus not involved any *justifiable* reliance by Prasil on any purported entitlement to remain here.

■ Instead Prasil's claim reduces itself to an argument that the Attorney General is required to grant her an immigration judge hearing under Act § 1250—even though Prasil herself has no right, under the express constraint imposed by Act § 1187(b)(2), to contest her removal. And that contention depends on her effort to parse the provisions of Act § 1250(a) in a way that might perhaps—at least arguably—call for a hearing in which she could interpose no defense (a somewhat odd notion in itself).

But the short answer is that if the Act is not indeed a seamless web as Prasil contends, that is really because the Program was engrafted onto the Act's then-existing provisions as an independent measure possessing its own self-contained waiver requirement. And that being so, any resultant ambiguity of the type that is now urged by Prasil simply brings into play the doctrine of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984) and its progeny, under which the interpretation placed on the statute by the administrative agency (in this instance via the promulgation of the Regulations) will be respected by the courts "unless they [the Regulations] are arbitrary, capricious, or manifestly contrary to the statute" (something that is surely not true here). And in this instance that doctrine is buttressed by Congress' repeated reauthorization and reenactment of the Program, which under such cases as *Lorillard v. Pons,* 434 U.S. 575, 580,

---

3. Before the 1996 Act the Act's provision for immigration judge hearings was found in Act § 1252. That provision has now been reposi-

tioned and renumbered by the new legislation. This opinion will employ the current numbering.

98 S.Ct. 866, 869–70, 55 L.Ed.2d 40 (1978) is considered to reflect the congressional adoption of the interpretation that has been embodied in the Regulations.

Accordingly Commissioner Meissner and Acting District Director Perryman must prevail, and this action is dismissed. It is therefore unnecessary to resolve the issue that has been posed by the parties' most recent submissions, in which they part company over the question whether the 1996 Act's prohibition against judicial review (a prohibition that plainly applies in other circumstances but that would have to be stretched to cover the present situation) would arguably deprive this Court of jurisdiction in any event—a question that would require the construction of brand-new statutory language that is not at all clear in that respect.